**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Christopher Davis (L135898), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25 C 11296 |
| v. | ) | |
| | ) | Hon. Sunil R. Harjani |
| John D. Idleburg, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Davis initiated this lawsuit *pro se* under 42 U.S.C. § 1983 after his attempts to post bond were rejected by the Lake County Sheriff's Office. The Court screened the operative complaint in compliance with 28 U.S.C. § 1915A and allowed a Fourth Amendment claim to proceed against Defendants Kristin Mendoza, the clerk who allegedly refused to accept the checks tendered by Plaintiff's family; Officer Timothy Reidy, who allegedly made comments suggesting he might have influenced Mendoza's decisions; and Sheriff John Idleburg, to the extent a department policy caused Mendoza to reject the bond payment. *See* [9].

Defendants' move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure [18], focusing on qualified immunity, though the arguments also stray into the merits of Plaintiff's claims.[1] After careful consideration, the Court finds that further fact development is necessary before the Court can properly assess whether Defendants are entitled to qualified immunity. Therefore, the Court denies Defendants' motion to dismiss without prejudice to Defendants raising qualified immunity on a more developed record.

### Background

The events giving rise to the claims in this case occurred at Lake County Jail between September 16, 2023 and September 18, 2023. [12] at 6.[2] Approximately two months earlier, the judge presiding over Plaintiff's state criminal proceedings "admitted Plaintiff to pretrial release with a condition that he post[] a cash monetary bond." *Id.* at 7. Plaintiff nevertheless remained

---

[1] Plaintiff concurrently filed two different response briefs. [27][28]. They present overlapping arguments, and Defendants raise no procedural concern. Given Plaintiff's *pro se* status, the Court considers Plaintiff's arguments from both briefs in its analysis. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 2012) ("[T]he court should consider allegations contained in the other court filings of a *pro se* plaintiff.").

[2] The following facts are taken from the operative pleading, Plaintiff's amended complaint [12]. For purposes of reviewing this motion to dismiss, the Court accepts as true, as it must, all factual allegations in the Complaint. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026).

incarcerated. *Id.* This lawsuit concerns Plaintiff's family's attempt to post bond for him beginning September 16, 2023. *Id.*

Documents attached to the operative complaint show that, at the time of the alleged events, the Lake County Sheriff's Office had a policy of accepting bonds to secure an inmate's release "twenty-four hours a day seven days a week." *Id.* at 33. Bond could be posted through jail reception, the booking desk, or lobby kiosks. *Id.* The policy provided that bond was "only accepted in the form of cash, a certified cashier's check made out to the 'Clerk of the Circuit Court' or by utilizing a debit/credit card with a positive identification card match to the person presenting the debit/credit card." *Id.* at 36. Payment of a separate bond fee, if paid by check, was required to be made payable to the "Lake County Sheriff." *Id.*

Plaintiff's family first attempted to post bond on or about Saturday, September 16, 2023,[3] when they presented a cashier's check at the jail reception made payable to the "Lake County Clerk's Office." *Id.* at 7. Plaintiff identified Defendant Kristen Mendoza as the receptionist with whom his family communicated. *Id.* Defendant Mendoza allegedly refused to accept the check because it was made payable to the incorrect payee. *Id.* Plaintiff, however, questions the reason the check was rejected because his family had previously posted a bond for his friend Derrick Tompkins using a cashier's check payable to "Lake County Clerk's Office." *Id.* at 8.

Plaintiff's family asked "jail officials" whether they could return with a cashier's check made payable to the correct payee on Monday, September 18, 2023, and whether the bond would be accepted. *Id.* Plaintiff and his family were concerned about the ability to post bond on September 18, 2023, because Illinois's bail laws were about to change. *See id.* Defendant Mendoza allegedly told the family that "he would still be allowed to post." *Id.*

The Illinois Pretrial Fairness Act went into effect on September 18, 2023. *See id.*; Cook Cnty. Gov't, *Pretrial Fairness Act Resources*, https://www.cookcountyil.gov/service/pretrial-fairness-act-resources (last visited June 29, 2026).[4] The Act is part of the larger SAFE-T Act. Cook Cnty. Gov't, *supra.* "The act eliminate[d] the use of money bond as a condition of pretrial release and reform[ed] pretrial hearing processes and detention procedures." *Id.*

When Plaintiff's family returned with a cashier's check payable to "the correct payee" on September 18, 2023, Defendant Mendoza told the family that "she was unsure whether or not she could accept and process Plaintiff's bond due to the [SAFE-T] Act taking effect and needed clarity from her supervisors." [12] at 8–9. Approximately two hours later, Defendant Mendoza allegedly told the family that she could accept and process the bond, but when the family presented "cash and [a] cashier's check," she informed the family that they were $6,000.00 short. *Id.* at 9.

---

[3] Plaintiff alleges in the amended complaint that his family presented the first check to the jail receptionist on September 18, 2023, but this date appears to be a typo because the parties seem to agree that Plaintiff's family first attempted to post bond on September 16, 2023.

[4] The Court takes judicial notice of this government website as a matter of public record. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

Plaintiff believed he had a $6,000.00 bond credit that could be applied to satisfy the shortfall, which he confirmed with his criminal defense attorney. *Id.* The attorney believed the jail's inability to locate the credit was a clerical error, but he could not assist because he was "tied up" in court. *Id.* Plaintiff's family then went to the county Clerk's Office, where a Clerk's Office employee allegedly stated that she could "clearly see that the court ordered Plaintiff's previous $6,000 dollars to be credited and applied" and that they "didn't know why the jail were [sic] claiming not to see it" since the jail "has access to the same remand order." *Id.* at 10. Even so, Defendant Mendoza allegedly had told the family that "she recall[ed] the $6,000" credit but was no longer able to "see[] the credit from the previous bond." *Id.* at 9–10.

Before Plaintiff and his family could resolve the $6,000.00 shortfall, Plaintiff learned from his criminal defense attorney that the State "filed an 'Emergency Petition to Detain' [Plaintiff] under the [SAFE-T] Act" and planned "to ask the Judge to detain you and keep you in custody without bond[.]" *Id.* at 10. The attorney also allegedly stated, "that's where all the delay tactics came from[.]" *Id.* Plaintiff's family then attempted to pay the $6,000.00 shortfall, and Defendant Mendoza allegedly refused to accept payment. *Id.* at 11. Defendant Mendoza also allegedly refused to answer the family's questions. *Id.*

Plaintiff appeared before the Lake County Circuit Court on September 18, 2023. *Id.* Plaintiff's attorney asked the state prosecutor why he brought the motion, and the prosecutor allegedly told the attorney and the court that Plaintiff had been attempting to post bond. *Id.* at 11–12. The court noted that Plaintiff had not posted bond and that "whatever problem you may have is with the jail, whatever bail statute there was, its gone, its history, it no longer exists, and there is no mechanism for the jail or the Clerk's Office to accept the posting of a cash monetary bail in the State of Illinois." *Id.* at 12. The court seemed to agree that Plaintiff should have been allowed to post bond before 12:00 a.m. on September 18, 2023, but "after 12:01 AM today, the old bail statute doesn't exist." *Id.* Neither the prosecutor nor the court seemed to know whether the jail would accept a cash bond at that point. *See id.* The court then granted the State's motion to detain Plaintiff, "removing Plaintiff's monetary condition altogether and ordering him to remain in custody without bail." *Id.* at 13.

Plaintiff later learned that the jail continued accepting and processing cash bonds for other detainees after September 18, 2023. *Id.* at 14–15, 37–40. When Plaintiff questioned correctional officers about his inability to post bond, unidentified officers allegedly told him that Defendant Officer Reidy said, "when you rub people wrong, and individuals in powerful positions you don't get the same gratitude and that it will all make sense late on[.]" *Id.* at 13. Plaintiff therefore believes that Reidy was involved in the jail's refusal to accept the bond money. *Id.*

The Court screened Plaintiff's amended complaint under 28 U.S.C. § 1915A and, based on the alleged facts, allowed a Fourth Amendment claim to proceed against (1) Defendants Reidy and Mendoza in their individual capacity based on their purported involvement in delaying the acceptance of Plaintiff's bail money until the bail order could be revoked; and (2) Defendant Idleburg in his official capacity based on procedures that allegedly caused a delay in processing Plaintiff's bond. [9]. All remaining claims and defendants were dismissed.

3

Defendants Mendoza, Idleburg, and Reidy have moved to dismiss the amended complaint under Rule 12(b)(6), arguing collectively that they did not violate a clearly established law and, as such, they are entitled to qualified immunity. In their reply, they also attempt to expand their arguments to address the sufficiency of the facts alleged against individual Defendants Idleburg and Reidy. But arguments raised for the first time in a reply brief generally are waived. *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). The Court therefore considers only the basis for dismissal first raised and developed in Defendants' opening brief.

### Legal Standard

In analyzing a Rule 12(b)(6) motion, the Court accepts the facts alleged in the complaint as true and construes the alleged facts in the light most favorable to the plaintiff. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). In doing so, it holds a *pro se* plaintiff to less stringent standards and liberally construes his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court also considers "documents attached to the complaint, documents that are critical to the complaint and are referred to in it, and information that is subject to proper judicial notice." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021). Dismissal under Rule 12(b)(6) on the basis of qualified immunity "is appropriate if, taking the facts alleged in the light most favorable to the plaintiff, the defendant is entitled to qualified immunity as a matter of law." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025). "In such circumstances, the plaintiff may state a claim, but it is not one 'upon which relief can be granted.'" *Id.* (citation omitted).

### Discussion

Qualified immunity protects public officials and employees "from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether Defendants are entitled to qualified immunity should be decided as early as possible. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). That said, dismissal under Rule 12(b)(6) based on qualified immunity "is a delicate matter that district courts should approach carefully." *Id.* "Because an immunity defense usually depends on the facts of the case," *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001), Rule 12(b)(6) generally is "a poor fit for dismissal on the basis of qualified immunity." *Hanson*, 967 F.3d at 590 n.2.

To defeat qualified immunity at the pleading stage, the alleged facts "must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Sabo*, 128 F.4th at 843. If the existence of qualified immunity is not "dependent on factual development"—*i.e.*, if it is "clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law"—then the "existence of qualified immunity is a purely legal question that the court can address on a motion to dismiss." *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019) (internal quotation

4

marks and citation omitted). Dismissal under Rule 12(b)(6) based on qualified immunity, however, is allowable only where the alleged facts assert "the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred." *Hanson*, 967 F.3d at 590(quoting *Jacobs*, 215 F.3d at 765 n.3). If the court cannot decide qualified immunity on the allegations of the complaint, it may postpone its ruling on qualified immunity until there is further factual development. *Mahajni v. Do*, 172 F.4th 547, 553 (7th Cir. 2026).

The Court addressed the first prong of the qualified immunity analysis when it determined in its screening order that the alleged delays in processing Plaintiff's bond plausibly suggested that Defendants violated the Fourth Amendment. [9] at 3–4. The facts have not changed, and Defendants do not challenge the screening order in their opening brief. They argue only that clearly established law did not put them on notice of a constitutional violation under the alleged circumstances. The Court therefore addresses only the "clearly established law" prong of the qualified immunity analysis.

The plaintiff bears the burden to demonstrate that a constitutional right is clearly established. *Jacobs*, 215 F.3d at 766. A right is "clearly established" when the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alvarado*, 267 F.3d at 652 (citation omitted). Clearly established law must not be defined "at too high a level of generality," but it also need not be "directly on point." *Sabo*, 128 F.4th at 844 (collecting cases). "[A] more general rule may apply with obvious clarity to the specific conduct in question." *Id.* (cleaned up). "[W]here the constitutional violation is patently obvious," the plaintiff may not be required to identify an analogous case. *Jacobs*, 215 F.3d at 767 (citing *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994)). Plaintiff has identified the right that Defendants allegedly violated as: "detention beyond the point at which a detainee is entitled to release constitutes a violation of the Fourth Amendment." [12] at 3. Plaintiff argues that the cashier's check presented by his family was "sufficient to satisfy the court-ordered bond," and denies the argument that it was incorrect. *Id.* at 2; [28] at 18. By not accepting the check, Defendants "nullified the court's bail order and prolonged [his] detention." [27] at 4; [28] at 11.

To determine whether this right was clearly established at the time of Defendants' alleged actions, the Court considered *Williams v. Dart*, 967 F.3d 625, 635 (7th Cir. 2020), at screening. There, the sheriff began an administrative review of the courts' bail orders and refused to comply with them in cases of his choosing, even after bond was posted. *Id.* at 630–31. The plaintiffs were detained for more than two days after they posted bond, which was beyond the reasonable amount of time needed to process their release. *Id.* at 635. The Seventh Circuit reversed the dismissal of the plaintiffs' Fourth Amendment claim because "courts tolerate only brief and reasonable administrative delay by a jailer in processing the release of an arrestee admitted to bail." *Id.* Consequently, it was clearly established by 2023 that a violation of the Fourth Amendment is implicated when the procedures imposed by a sheriff's office after a judge has set the terms of a criminal defendant's bail (and the terms have been satisfied) cause prolonged pretrial custody. *See id.* In a sufficiently analogous manner, Plaintiff asserts that he had met the conditions of his bond release, but the jail employees refused to comply with the bail order by refusing to accept his bond payment. [12] at 7–11. As a result, he was detained longer than the time necessary to process his

5

release to allow the State to obtain a new custody order revoking his ability to post bond.[5] *Id.* at 11–13.

Defendants argue that they refused Plaintiff's bond payments on September 16, 2023, and September 18, 2023, for reasons that fail to demonstrate a prolonged detention. They put forward separate arguments for each day's events, which the Court addresses in turn.

## I.    September 16, 2023

Plaintiff's family first attempted to post bond for Plaintiff on September 16, 2023, by presenting a cashier's check to Defendant Mendoza made payable to the Lake County Clerk's Office. Defendant Mendoza rejected the check because it was made payable to the "Lake County Clerk's Office" instead of the Clerk of the Circuit Court, which Defendants contend was the only entity allowed to receive bond payments under Illinois law. [18] at 4–5. Defendants also contend, without citation to authority, that the Clerk of the Circuit Court is "a completely different office" from the county clerk. *Id.* at 9. Defendants argue that they are entitled to qualified immunity because "Plaintiff did not have a clearly established right . . . to make bail payment to the county clerk," even if the Sheriff's Office had accepted improper payments in the past. *Id.* at 4–5, 7–11. In other words, Defendants argue, the law was not clearly established in September 2023 that rejecting a check payable to the county clerk would violate the Fourth Amendment. *Id.* at 10.

Defendants might have been justified in rejecting a check made payable to an incorrect payee, but it is unclear that was the only reason for Defendant Mendoza's denial. The alleged facts and inferences, when construed liberally and in Plaintiff's favor, suggest that the Sheriff's Office had accepted a check payable to the county clerk in the past. *See* [27] at 3. If so, a factfinder could reasonably infer that Plaintiff had satisfied the terms of bond on September 16, 2023, and that Defendants might have accepted a check payable to the Lake County Clerk's Office if the check had not been presented on the eve of a change in Illinois's bail law. There are allegations in the operative complaint as well that the delay was intentional because, "had the jail accepted his bond, the State would not [have been] able to exercise [the renewed] petition to detain." *See* [12] at 12. Accepting Plaintiff's theory of the case as true, as the Court must at this juncture, Defendant Mendoza's rejection of the check because of the identified payee on September 16, 2023, is just one factor that must be considered in determining whether the delay in processing Plaintiff's bail was reasonable. Thus, Defendants have defined the right too narrowly at this time, and there is sufficient established law for the broader right asserted by Plaintiff. *See Hanson*, 967 F.3d at 590.

---

[5] Defendants cite *Doe v. Thomas*, 604 F. Supp. 1508, 1513 (N.D. Ill. 1985), and *Golberg v. Hennepin County*, 417 F.3d 808, 812–13 (8th Cir. 2005), to argue that a modest delay in releasing a detainee after they post bond does not violate the detainee's constitutional rights. These are not persuasive, however, because they concerned hours-long delays as compared to Plaintiff's more significant delay, which is more similar to the days-long delays considered in *Williams.*

## II.    September 18, 2023

Defendants argue that because the SAFE-T Act abolished cash bail as of 12:01 a.m. on September 18, 2023, Plaintiff's right to post bond later that day was not clearly established. *Id.* But this, too, examines Plaintiff's right too narrowly.

Implementation of the SAFE-T Act and any uncertainty it created about the Sheriff's Office's ability to accept bail is just one of several factors that must be considered in assessing the reasonableness of the delays in processing Plaintiff's bail. The alleged facts describe a series of events, starting with a two-hour delay while Defendant Mendoza checked with supervisors to determine whether she could accept bail payments. [12] at 8–9. After allegedly telling Plaintiff's family that she *could* accept payment, Defendant Mendoza rejected the family's attempt to post bond because she purportedly could not locate a credit that the Clerk's Office had no trouble locating. *Id.* at 9. When the family collected enough money to satisfy the bond, Defendant Mendoza then refused to accept payment because the State's Attorney was in the process of revoking Plaintiff's bail order. *Id.* at 10–11.

Plaintiff eventually will have to produce evidence supporting his allegations. But at this stage, the Court must accept the alleged facts as true, and the alleged facts plausibly suggest that Defendant Mendoza slow-walked acceptance of Plaintiff's bail payment until his bail order could be revoked, in violation of the Fourth Amendment. Defendants' arguments even suggest that keeping Plaintiff in custody might have been a factor in their decision to reject Plaintiff's efforts to bond out on September 18, 2023. *See* [29] at 2 (Defendants arguing that "it was not unreasonable for the jail to refuse to accept and process bail until the resolution of the State's petition to detain to avoid the potential burden of having to re-process and re-book Plaintiff if the State's petition was granted"); *see also* [18] at 12 (acknowledging that criminal defendants "who were—as of or before the date the Act takes effect—already released upon payment of their bail [were] permitted to remain on the same terms of their original bail bond").

Defendants argue that the facts and circumstances of this case are similar to the facts and circumstances of *Sabo v. Erickson.* In *Sabo*, a state court sentenced the plaintiff to a term of probation that exceeded the maximum allowable under state law, which meant the excess was void. *Id.* at 841. The plaintiff was arrested and reincarcerated on a probation violation after the term of probation should have ended. *Id.* After discovering this sentencing error, he sued two employees of the Department of Corrections responsible for reviewing judgments of conviction for compliance with state law, alleging that the employees failed to catch the judicial error. *Id.* The district court dismissed the claim against the correctional officers for failure to state a claim, and the Seventh Circuit affirmed based on qualified immunity. The Seventh Circuit explained that it would not impute a sentencing judge's error to a correctional officer. *Id.* at 847.

Here, Defendants argue that they were following the state court's orders to detain Plaintiff and cannot be held liable for extending his detention on September 18. But Plaintiff complains of his prolonged detention resulting from Defendants refusing his family's check that would have satisfied the existing order authorizing release on bond, not just his detention after the state court issued a new detention order. *See* [12] at 8–12. Thus, the circumstances here are different than *Sabo.*

7

Defendants further justify the delay by pointing to the change in law. While the operation of the SAFE-T Act may have caused some delay on September 18, 2023, the alleged facts show that Defendant Mendoza checked with her supervisors on September 18, 2023, and was willing to accept the family's bail payment at some point. *Id.* at 9. Defendant Mendoza later changed course, suggesting that factors other than interpretation of the SAFE-T Act might have influenced her decision. *Id.*

In sum, the facts alleged by Plaintiff describe a denial of bail beyond the reasons addressed in Defendants' motion to dismiss. It remains to be seen whether Plaintiff can produce evidence supporting his allegations or whether, on any facts that are established in the future, Defendants would be entitled to qualified immunity. But those are questions for another day. On the present record and in the present procedural posture, the Court cannot determine that Defendants are entitled to qualified immunity.

### Conclusion

For the reasons discussed above, the Court denies Defendants' motion to dismiss without prejudice to their ability to raise qualified immunity on a more fully developed record.

**SO ORDERED.**

Dated: June 30, 2026

Sunil R. Harjani
United States District Judge

8